# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### 1:12-CV-178

| | | |
|---|---|---|
| **KAREN A. WALTERS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **CITY OF GREENSBORO,** | ) | |
| **NORTH CAROLINA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

The plaintiff, Karen A. Walters, complaining of defendant, alleges the following:

## ACTION

1.      Plaintiff, a certified law enforcement officer and a lieutenant employed by the Greensboro Police Department, a department of the City of Greensboro, institutes this action to address sex discrimination and retaliation against plaintiff as a result of her reports of and opposition to discriminatory practices in the workplace in the course of her employment with the Greensboro Police Department.   Because plaintiff has spoken out against such practices, she has been subjected to severe damages to her reputation and career.

## JURISDICTION AND VENUE

2.      Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, *as amended* by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq*.; and violations of plaintiff's rights under the United States Constitution pursuant to 42 U.S.C. § 1983.

3.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3); 42 U.S.C. § 1983; and 28 U.S.C. § 1331.

4.      The unlawful practices alleged below were committed within the Middle District of the State of North Carolina, and venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5.      The plaintiff, Karen A. Walters, is a female citizen of the United States and a resident of Guilford County, North Carolina.   At all times pertinent to this action, plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f).

6.      The defendant City of Greensboro ("City") is a municipal corporation established pursuant to N.C. Gen. Stat. § 160A-1, *et. seq.*, as defined and described in N.C. Gen. Stat. § 160A-11.   In the exercise of its statutory powers, defendant City has established and operates the Greensboro Police Department ("GPD") as a department of the City.   At all times relevant to this action, defendant City acted

2

through its managers and policymakers, including its Chief of Police and City Manager; and the acts, edicts, and practices of these persons represent the official policies of defendant City. At all times relevant to this action, defendant City was the "employer" of the plaintiff within the meaning and definition of 42 U.S.C. § 2000e(b), and a "person" within the meaning and definition of 42 U.S.C. § 1983.

**FACTS**

7. Plaintiff is a law enforcement officer, and has been certified by the State of North Carolina since 1986.

8. Plaintiff was initially employed by defendant City on June 1, 1988, as a patrol officer.

9. Plaintiff excelled in her performance and, prior to the events which led to this action, was promoted to Police Officer II in 1989; corporal in 1999; and sergeant in 2002.

10. On July 1, 2007, plaintiff was promoted to the position of lieutenant. In this position plaintiff was responsible for the direction and control of the personnel within her division to ensure the proper performance of duties and adherence to established rules, regulations, policies and procedures. As lieutenant, plaintiff was also responsible for assuming command of the division in the absence of her captain/commanding officer.

3

11.    In her position as lieutenant, plaintiff has served in the criminal investigations division, and the patrol division of the GPD.

12.    At all times plaintiff has excelled in her performance as a lieutenant, and has met or exceeded any reasonable expectations of defendant.

13.    As a result of her performance, plaintiff has received periodic merit raises, excellent reviews, and commendations for her work.

### Plaintiff's Reports of Hostile Work Environment

14.    From December, 2007, to June, 2008, plaintiff worked under and reported to a male captain of the GPD.  The captain is referred to below as "her captain" or "plaintiff's captain" during the time of her assignment to his division, or as "plaintiff's 2007-2008 Captain" thereafter.

15.    During this period, plaintiff continued to perform at the highest level in carrying out her responsibilities to GPD.

16.    Plaintiff's captain was abusive and aggressive towards plaintiff, and treated her in an extremely condescending manner because she was a female.

17.    Specifically, during this period her captain engaged in lengthy verbal tirades and diatribes against plaintiff; wrote lengthy demeaning e-mails to plaintiff; demanded that plaintiff treat some officers under her supervision in a favorable manner; and publically berated plaintiff in front of other officers.

4

18. At times during her captain's most aggressive tirades, plaintiff feared for her physical safety.

19. Plaintiff attempted to address the problems through direct communication with her captain, but was unsuccessful.

20. When plaintiff complained about her captain's sexually discriminatory conduct, she was initially told by her superiors that she should "go along" with it, rather than complaining.

21. In or about March, 2008, Interim Chief Tim Bellamy was promoted to Chief of the GPD.

22. Plaintiff raised issues concerning her captain's discriminatory conduct with Chief Bellamy, and requested transfer to another division.

23. In response, Chief Bellamy informed plaintiff that she could be transferred only if she accepted a demotion. Plaintiff refused demotion.

24. The conduct of plaintiff's captain, as described above, created a sexually hostile work environment which was offensive and abusive towards plaintiff and other women.

25. As a direct result of her captain's treatment, plaintiff was severely distressed, and her health was threatened.

26. Finally, in June, 2008, plaintiff was transferred out of her captain's

5

division as a result of her continued reports of his abusive, aggressive, and threatening conduct.

27.     Plaintiff was transferred to the patrol division as a watch commander. As watch commander, plaintiff coordinated and supervised the delivery of police services throughout the entire city.

28.     Plaintiff continued to exceed all performance standards in carrying out her duties.

29.     Following her transfer, plaintiff's 2007-2008 Captain continued to harass plaintiff.

30.     On or about July 18, 2008, plaintiff's 2007-2008 Captain delivered to plaintiff a lengthy multi-page evaluation of her performance for the year in which she had served under his command.   The evaluation was untrue, unfair and extremely demeaning.

31.     The evaluation of plaintiff by plaintiff's 2007-2008 Captain was the only evaluation she had received as a lieutenant with GPD that had been lower than "Outstanding" (Level V) or "Exceeds Expectations" (Level IV).

32.     Plaintiff appealed her evaluation by plaintiff's 2007-2008 Captain, and raised issues concerning the continuing hostile work environment caused by the discriminatory conduct of plaintiff's 2007-2008 Captain.

6

33.     Ultimately, plaintiff was successful in demonstrating that the evaluation by plaintiff's 2007-2008 Captain concerning her performance was unfair, and did not reflect her performance, and the evaluation was overturned.  In its place, an Assistant Chief evaluated her at Level IV, "Exceeds Expectations," which more accurately reflected her performance for the 2007-2008 year.

34.     Although plaintiff prevailed on her appeal of the evaluation, the GPD failed to expunge the evaluation from her personnel file, and failed to commit to correcting the hostile work environment that had been created by plaintiff's 2007-2008 Captain, and tolerated by Chief Bellamy.

35.     Thereafter, plaintiff's 2007-2008 Captain continued harassing plaintiff through personal confrontations and e-mails.

36.     Consequently, on or about September 22, 2008, because her efforts for corrective action had been unsuccessful, plaintiff filed a grievance ("Grievance") to defendant City's Human Resources (HR) Department concerning the evaluation by plaintiff's 2007-2008 Captain and the failure of the GPD to expunge it, and the failure of the GPD to take corrective action to address sex discrimination in the workplace.   Plaintiff requested an investigation and immediate corrective action so that neither she nor other female employees would have to endure the hostile work environment created and perpetuated by plaintiff's 2007-2008 Captain and the GPD.

7

37.    On or about September 25, 2008, plaintiff met with defendant City's officials.   At this meeting, the City Human Resources (HR) employee assigned to the GPD informed all present that plaintiff had presented evidence of a hostile work environment.

38.    Plaintiff's reports of plaintiff's 2007-2008 Captain's conduct were also referred to the Internal Affairs (IA) Department for investigation.

39.    Plaintiff pursued her Grievance and complaints through the appropriate channels according to defendant City's procedures in order to raise the awareness and consciousness of City and GPD officials of significant problems within the GPD.

40.    Plaintiff was subsequently advised that a full investigation had been conducted concerning the conduct of plaintiff's 2007-2008 Captain, and that the findings of the investigators had been submitted to Chief Bellamy.

41.    Over the next several months, plaintiff repeatedly requested that she be provided a copy of the findings of her Grievance in accordance with the grievance procedure.

42.    Plaintiff was informed on one occasion that the Grievance had been lost.

43.    Plaintiff was advised by various defendant City officials, including an

Assistant City Manager, that in the interest of her career and promotion potential with GPD, she should withdraw or cease her pursuit of her Grievance.

44.    Plaintiff was described by defendant City officials as a "troublemaker," and by other epithets because she pursued her Grievance and the IA complaint concerning the sexually discriminatory conduct and environment of the GPD.

## First Application for Promotion to Captain

45.    As of February, 2009, there were approximately 13 captains in the GPD, 11 of whom were male, and 2 of whom were female.

46.    At or prior to that time, Chief Bellamy notified members of the department that the GPD would be filling positions of captain, and that current lieutenants could apply for the positions pursuant to the promotion policy then in place.

47.    The promotion policy in effect at that time pertaining to the promotion of lieutenant to captain ("Promotion Policy #1") provided that applicants for promotion were required to have two years of service as lieutenants; that applicants would be required to go through an assessment, at the conclusion of which each applicant would be ranked according to the applicant's performance during the assessment; that the "Rule of Five" would prevail, requiring that the Chief of Police would make the next five promotions to captain from the first five candidates on the

list (first band), and that their priority in this regard would continue for the following two years (or thereafter, until the next assessment); and that candidates from the second five (second band) could not be selected until the first five had been promoted; and that upon each vacancy of the position of captain, the GPD would fill the vacancy within 90 days.

48.     Plaintiff applied for the position of captain pursuant to Promotion Policy # 1, and completed the required assessment on or about February 16, 2009.

49.     On or about February 19, 2009, plaintiff learned that she had ranked fourth in the field of 13 applicants.

50.     The other four applicants in the top five performers of the promotional test were male officers.

51.     On about February 24, 2009, Chief Bellamy of the GPD announced that three male officers who had ranked in the top three among the top five performers of the promotional test were being promoted to the position of captain, effective March 16, 2009.

52.     Under Promotion Policy #1, plaintiff and one other lieutenant, a male officer who ranked behind plaintiff in the number five spot, were eligible and had priority to move into any open captain positions for the next two years, or thereafter, until the next assessment.

10

53.     On January 11, 2010, plaintiff, along with others, received notice that the number five ranked candidate had been promoted to captain, effective February 1, 2010.

54.     Plaintiff was denied promotion to the position of captain at that time.

55.     Plaintiff was better qualified for promotion to captain than the male applicants promoted from February 2009, to February 1, 2010.

56.     Upon information and belief, as of February 1, 2010, the effective date of the last promotion, the GPD still had 13 captains, 11 of whom were male, and 2 of whom were female.

**Plaintiff's Continuing Actions Concerning Hostile Work Environment**

57.     On or about February 8, 2010, plaintiff had direct discussions with the City Manager's Office regarding the continued issues of sexually discriminatory behavior and retaliation within the GPD.

58.     Plaintiff provided the Assistant City Manager with facts and documents concerning her Grievance and continuing concerns of the sexually hostile work environment within the GPD.

59.     On or about February 17, 2010, after repeated requests for findings and other information regarding her Grievance, plaintiff received a memorandum, prepared on February 17, 2010, regarding the September 25, 2008 meeting in which

defendant City acknowledged the hostile work environment created by plaintiff's 2007-2008 Captain and the GPD.

60.     On or about March 25, 2010, after delivering a letter to the Assistant City Manager documenting their earlier discussions, plaintiff was advised by the manager that she should stop pursuing the issues or her career with the GPD would be over.

61.     In May, 2010, plaintiff's 2007-2008 Captain was relieved of his duties as captain of the GPD.

62.     Although plaintiff was entitled to priority for any positions of captain under the above policy, following the departure of plaintiff's 2007-2008 Captain, a male lieutenant was assigned as "acting captain" over his division.

63.     On or about July 9, 2010, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 435-2010-00727 ("EEOC Charge # 1") in its Greensboro Regional Office.

64.     Plaintiff charged in EEOC Charge # 1 that she had been denied promotion to captain because of her sex, and in retaliation for opposing and raising issues concerning sex discrimination and the hostile work environment, in violation of Title VII, 42 U.S.C. § 2000e-2 and -3.

65.     In or about July, 2010, Chief Bellamy retired.

66.     On or about August 4, 2010, plaintiff's 2007-2008 Captain was terminated by the GPD.

## Second Application for Promotion to Captain

67.     As of August, 2010, there were one or more open positions of captain that had not been filled although plaintiff had priority for the positions under Promotion Policy # 1.

68.     Previously, on or about January 11, 2010, lieutenants were notified that the new 2010 Interactive Assessment Exercise for the rank of captain would be offered on September 20-24, 2010.

69.     On January 23-24, 2010, plaintiff declared her intent to participate in the promotional process for the rank of captain, and to undergo testing on September 20, 2010, although such testing should not have been necessary given her priority ranking under Promotion Policy # 1.

70.     However, on or about August 25, 2010, the promotion process scheduled for September, 2010, was suspended and the orientation and testing was cancelled.

71.     Effective September 1, 2010, Chief Ken Miller was hired as the new Chief of Police of the GPD.

72.     On or about September 6, 2010, Chief Miller discussed the

environment and conditions of the GPD while riding in a police vehicle with plaintiff.

73.     During the discussion, plaintiff informed Chief Miller that she had filed EEOC Charge # 1 seeking corrective action by defendant City to eliminate discrimination in the GPD workplace.

74.     Chief Miller informed plaintiff that he did not approve of her action of going outside the GPD to raise the issues concerning her discriminatory treatment, and asked if she would drop the charge.

75.     Plaintiff responded that she could not withdraw her charge until the issues surrounding the denial of her promotion, general sex discrimination and the hostile work environment within the GPD, were addressed and resolved.

76.     On or about December 15, 2010, Chief Miller announced that new promotions to the position of captain would be made by the end of January, 2011.

77.     On or about January 7, 2011, Chief Miller announced that a new promotional procedure ("Promotion Policy # 2") would thereafter govern promotions to the position of captain.

78.     Promotion Policy # 2 removed the eligibility requirement that required service as a lieutenant for two years as a condition of eligibility for promotion to captain, and permitted all lieutenants to test, regardless of seniority.

79.     Promotion Policy # 2 eliminated the Rule of Five under Promotion Policy # 1, which gave priority to candidates who had tested in the top five applicants in the previous testing.

80.     Consequently, plaintiff was deprived of her priority which she had earned as a result of her ranking within the top five performers under the previous testing.

81.     Promotion Policy # 2 required a written test, an oral test, a peer assessment and "input" of the assistant chiefs.

82.     The testing under Promotion Policy # 2 was subjective, and was not job-related, either by design or by result.

83.     Promotion Policy # 2 provided that Chief Miller would have sole discretion in the selection of positions, and that any appeal of the decision would be decided by Chief Miller.

84.     Prior to the testing for promotions to the position of captain, it was known in the GPD that one of the two female captains was retiring in the Spring of 2011.   In order to fill her position immediately, Chief Miller directed (through an assistant chief) that she give notice of her retirement earlier than she had anticipated. The female captain complied and ultimately retired, effective May 1, 2011.

85.     Plaintiff was one of 10 applicants for the open positions of captain, 6 of

whom were male, and 4 of whom were female.

86. Plaintiff performed well on all phases of the performance tests under Chief Miller's Promotion Policy # 2.

87. On or about February 11, 2011, Chief Miller announced that 3 applicants had been selected for promotion to the position of captain, all of whom were male officers.

88. Accordingly, plaintiff was again denied promotion to the position of captain.

89. Two of the individuals promoted to the position of captain were male officers who had scored in the second band of testing in 2009, ranked 6 through 10, behind plaintiff, who had ranked in the top band.

90. The third officer promoted to the position of captain was a male candidate who had been a lieutenant for less than two years, and would have been ineligible for the position under Promotion Policy # 1.

91. Plaintiff was better qualified for promotion to captain than the male applicants promoted in February, 2011.

92. On or about March 9, 2011, plaintiff filed her second Charge of Discrimination with the EEOC, Charge No. 435-2011-00360 ("EEOC Charge # 2") in its Greensboro Regional Office.

16

93.     Plaintiff charged in EEOC Charge # 2 that she had been denied promotion to captain because of her sex, and in retaliation for her complaints of sex discrimination, and her filing of EEOC Charge # 1, in violation of Title VII, 42 U.S.C. § 2000e-2 and -3.

94.     Upon information and belief, following the effective date of the promotions and after the female captain's retirement, effective May 1, 2011, there were 13 captains within the GPD, only one of whom was female.

95.     Upon information and belief, a female has not been promoted to the position of captain in the GPD since April, 2007.

### Additional Facts

96.     As described above, the conduct of plaintiff's 2007-2008 Captain was severe and pervasive, and created an abusive and hostile work environment, permeated with discrimination, which detrimentally and materially altered plaintiff's conditions of employment, and disrupted the performance of her job.

97.     From December, 2008, to the present, plaintiff has engaged in protected activity within the meaning of Title VII, and under the Constitution, by complaining and reporting to defendant City's managers concerning sex discrimination in the workplace.

98.     Plaintiff engaged in protected activity within the meaning of Title VII,

17

and under the Constitution, by filing Charges of Discrimination with the EEOC.

99.   At all times pertinent to this action, defendant City, including its managers and its Chief of Police, was responsible for the hiring, training, supervision, discipline, and retention of the City's officers; and was further responsible for enforcing policies, regulations and rules to insure that its employees complied with the laws of the State of North Carolina and of the United States.

100.   During the time period pertinent to this action, defendant City, including its managers and Chief of Police to whom it had delegated such duties, failed to carry out their official responsibilities and duties, as follows:

    a.   In failing to establish reasonable policies and to take reasonable precautions in the hiring, promotion and retention of officers, including specifically plaintiff's 2007-2008 Captain;

    b.   In failing to train or instruct its managers, Chief of Police and other employees who had demonstrated a discriminatory animus;

    c.   In failing to supervise its managers, Chief of Police and other employees who had demonstrated a discriminatory animus;

    d.   In creating and permitting the continuation of a hostile work environment in which plaintiff's work performance was disrupted;

18

e.  In retaliating against plaintiff for her reports and complaints of discrimination in the GPD workplace and her requests for assistance and protection;

f.  In ratifying, condoning and acquiescing in the discriminatory and retaliatory actions of the managers, Chief of Police and other employees;

g.  In failing to take prompt corrective and/or disciplinary action to address discrimination in the GPD workplace; and

h.  In other acts and omissions.

101.   Upon information and belief, the abuse to which plaintiff was subjected was consistent with a custom, policy, pattern and practice of the GPD of gender discrimination in its promotional practices, and retaliation against those who have raised issues concerning gender discrimination, including plaintiff; and the defendant City was deliberately indifferent to the repeated violations of the civil and constitutional rights of plaintiff and other employees who were subjected to unlawful discrimination in the GPD workplace.

102.   At all times pertinent to this action, with respect to the decisions made and actions taken regarding plaintiff, Chief Bellamy and Chief Miller were each acting under color of state law and authority, within the scope of his employment

with defendant, and in furtherance of his employer's business.

103.   At all times pertinent to this action, defendant City condoned, acquiesced in, and ratified the discriminatory conduct of the GPD and its officers, and acted with gross and deliberate indifference to plaintiff's rights to work in an environment free of sexual discrimination.

104.   At all times pertinent to this action, Chief Bellamy or Chief Miller, respectively, was the highest decisionmaker with respect to employees of the GPD, and was responsible for providing and implementing lawful policies concerning promotions within the GPD.

105.   Defendant City failed to provide fair and adequate procedures for promotions.

106.   Defendant City failed to provide fair and adequate procedures for grievances and/or failed to follow its established policies, procedures, and directives regarding grievances and complaints.

107.   Defendant City failed to monitor and supervise the Chief of GPD with respect to his obligations to provide a policy of promotions free from sex discrimination and retaliation for reporting the sexually hostile work environment of the GPD.

20

## ADMINISTRATIVE PROCEDURES

108.   As alleged above, on or about July 9, 2010, plaintiff filed a Charge of Discrimination and Retaliation (EEOC Charge # 1) with the Equal Employment Opportunity Commission in its Greensboro Area Office in Greensboro, North Carolina.   The plaintiff's EEOC Charge # 1 alleged that defendants had engaged in unlawful sex and race discrimination, and retaliation against plaintiff in the denial of her promotion in February, 2010, and in subjecting plaintiff to a hostile work environment.

109.   On or about March 7, 2011, plaintiff filed a Charge of Discrimination and Retaliation (EEOC Charge # 2) with the Equal Employment Opportunity Commission in its Greensboro Area Office in Greensboro, North Carolina.   The plaintiff's EEOC Charge # 2 alleged that defendant had engaged in unlawful sex discrimination and retaliation against plaintiff in the denial of her promotion in February, 2011.

110.   On January 24, 2012, the United States Department of Justice issued its Notices of Right to Sue on plaintiff's EEOC Charge #1 and EEOC Charge # 2, which plaintiff received thereafter.   Each notice provides that plaintiff has 90 days from her receipt of the notice to file legal action on her federal civil rights claims for sex discrimination and retaliation pursuant to 42 U.S.C. § 2000e-5(f).

111.   Plaintiff has complied with all procedural prerequisites to filing this action.

## FIRST CLAIM FOR RELIEF
### Title VII Claim for Sex Discrimination and Retaliation

112.   Plaintiff hereby incorporates the foregoing paragraphs, as if fully set out herein.

113.   The defendant City has committed acts and followed policies and practices which discriminated against plaintiff because of her sex, and retaliated against plaintiff because of her opposition to sex discrimination and a hostile work environment, in violation of 42 U.S.C. §§ 2000e-2 and 2000e-3.

114.   Specifically, defendant City, through the GPD, discriminated and retaliated against plaintiff as follows:

a.   In creating and permitting a sexually hostile work environment in which plaintiff was required to work;

b.   In repeatedly denying plaintiff a promotion to the position of captain;

c.   In its pattern and practice of discrimination of women in the GPD, including plaintiff;

d.   In retaliating against plaintiff for her opposition to and complaints of sex discrimination in promotions and a hostile work environment; and

e.   In other acts of sex discrimination and retaliation against plaintiff.

22

115. As a proximate result of defendant City's violations of plaintiff's civil rights, plaintiff has suffered damages, including loss of income and benefits; mental anguish and emotional distress; embarrassment and humiliation; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover her compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5.

116. Plaintiff is entitled to an immediate promotion to the position of captain; and other equitable relief as necessary to remedy the effects of defendant City's pattern and practice of sex discrimination against plaintiff and other female employees of the GPD, and to protect plaintiff and other female employees from future violations of their rights.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 Violation---Equal Protection

117. Plaintiff hereby incorporates the foregoing paragraphs, as if fully set forth herein.

118. In the discriminatory and retaliatory treatment of plaintiff, Chief Bellamy and Chief Miller, respectively, each acting under color of state and local law, denied to plaintiff her Constitutional right to equal protection of the law, to be free from sex discrimination and retaliation, as guaranteed by the Fourteenth Amendment to the United States Constitution, and other provisions of federal law, in

23

violation of 42 U.S.C. § 1983.

119. Specifically, defendant City, through the GPD, discriminated and retaliated against plaintiff as follows:

    a. In creating and permitting a sexually hostile work environment in which plaintiff was required to work;

    b. In repeatedly denying plaintiff a promotion to the position of captain;

    c. In its pattern and practice of discrimination of women in the GPD, including plaintiff;

    d. In retaliating against plaintiff for her opposition to and complaints of sex discrimination in promotions and a hostile work environment; and

    e. In other acts of sex discrimination and retaliation against plaintiff.

120. Defendant is liable for the violation of plaintiff's Constitutional rights on the grounds that the violations arose from the defendant City's official action, policy or custom in condoning and failing to address sex discrimination within the GPD; from the actions and omissions of the Chief of Police of the GPD and top officials of the defendant City, the final decisionmaking authorities concerning policies and practices of the GPD; from the defendant City's failure to train and supervise the Chief of Police of the GPD with respect to sex discrimination; and from the defendant City's deliberate indifference to sex discrimination occurring

within the GPD.

121. As a proximate result of defendant's violations of plaintiff's Constitutional rights, plaintiff has suffered damages, including loss of income and benefits; mental anguish and emotional distress; embarrassment and humiliation; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover her compensatory damages pursuant to 42 U.S.C. §§ 1981a.

122. Plaintiff is entitled to immediate promotion to the position of captain; and other equitable relief as necessary to remedy the effects of defendant City's pattern and practice of sex discrimination against plaintiff and other female employees of the GPD, and to protect plaintiff and other female employees from future violations of their rights.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Violation---First Amendment

123. Plaintiff hereby incorporates the foregoing paragraphs, as if fully set forth herein.

124. Issues of sex discrimination are a matter of public concern to the citizens of the City of Greensboro.

125. In her reports of sex discrimination and a sexually hostile work environment, plaintiff exercised her right to free speech under the First Amendment

25

to the United States Constitution, reporting on matters and issues of public concern to the citizens of defendant City.

126. Chief Bellamy and Chief Miller, respectively, each acting under color of state and local law, retaliated against plaintiff for her exercise of her First Amendment rights to free speech in violation of 42 U.S.C. § 1983.

127. Defendant City is liable for the violation of plaintiff's Constitutional rights on the grounds that the violations arose from the defendant City's official action, policy or custom in condoning and failing to address sex discrimination within the GPD; from the actions and omissions of the Chief of Police of the GPD and top officials of defendant City, the final decisionmaking authorities concerning policies and practices of the GPD; from the defendant City's failure to train and supervise the Chief of Police of the GPD with respect to sex discrimination; and from the defendant City's deliberate indifference to sex discrimination occurring within the GPD.

128. As a proximate result of defendant City's violations of plaintiff's Constitutional right to free speech, plaintiff has suffered damages, including loss of income and benefits; mental anguish and emotional distress; embarrassment and humiliation; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover her compensatory

damages pursuant to 42 U.S.C. §§ 1981a.

129. Plaintiff is entitled to immediate promotion to the position of captain, and other equitable relief as necessary to remedy the effects of defendant City's pattern and practice of sex discrimination against plaintiff and other female employees of the GPD, and to protect plaintiff and other female employees from future violations of their rights.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff hereby requests that this Court provide the following relief:

A.   A declaratory judgment that the acts, practices and policies of defendant City were in violation of Title VII of the Civil Rights Act of 1964, *as amended*, and the Constitution of the United States;

B.   An injunction requiring the immediate promotion of plaintiff to the position of captain of the GPD, with salary increases, benefits and seniority, retroactive to February 2010;

C.   A permanent injunction enjoining defendant City, its officers, agents, employees, and all of those acting in concert with defendant City and at its direction, from continuing to engage in the unlawful and discriminatory policies, acts and practices complained of herein;

D.      Compensatory damages in an amount in excess of $100,000;

E.      Pre-judgment and post-judgment interest on all amounts awarded in this action;

F.      The costs of this action, including reasonable attorneys' fees as provided by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and

G.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to all issues raised herein.


This the 21st day of February, 2012.


/s/Robert M. Elliot
Robert M. Elliot
N.C. Bar No. 7709
ELLIOT PISHKO MORGAN, P.A.
Winston-Salem, North Carolina 27101
Telephone: (336) 724-2828
Fax No. (336) 724-3335
rmelliot@epmlaw.com